

**SO ORDERED,**

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: July 6, 2020**

**The Order of the Court is set forth below. The docket reflects the date entered.**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

**ANITA S. GUTIERREZ,**                                    CASE NO. 20-50129-NPO

**ALLEGED DEBTOR.**                                                CHAPTER 7

**MEMORANDUM OPINION AND ORDER GRANTING
INVOLUNTARY PETITION AGAINST AN INDIVIDUAL
AND DENYING THE MOTION TO DISMISS INVOLUNTARY PETITION
AND ALTERNATIVELY FOR ABSTENTION UNDER § 305 AND OTHER RELIEF**

This matter came before the Court for trial by video conference on June 12, 2020 (the "Trial"), on the Involuntary Petition Against an Individual (the "Involuntary Petition") (Dkt. 1) filed by the petitioning creditor, Hancock Whitney Bank ("Hancock Whitney"); the Motion to Dismiss Involuntary Petition and Alternatively for Abstention under § 305 and Other Relief (the "Motion to Dismiss") (Dkt. 7) filed by the alleged debtor, Anita S. Gutierrez (the "Alleged Debtor"); the Hancock Whitney Bank's Response and Defenses to Motion to Dismiss Involuntary Petition and Alternatively for Abstention under § 305 and Other Relief (Dkt. 21) filed by Hancock Whitney; the Alleged Debtor's Reply to Hancock Whitney's Response to Motion to Dismiss and for Abstention (Dkt. 25) filed by the Alleged Debtor; and the Answer and Affirmative Defenses (the "Answer") (Dkt. 51) filed by the Alleged Debtor in the above-referenced involuntary chapter 7 proceeding (the "Involuntary Proceeding").  The Pretrial Order for Involuntary Petition (the

Page 1 of 33

"PTO") was entered on June 8, 2020 (Dkt. 57).   At the Trial, Derek A. Henderson ("Mr. Henderson") represented Hancock Whitney and Patrick A. Sheehan ("Mr. Sheehan") represented the Alleged Debtor.  Hancock Whitney introduced forty-seven (47) exhibits into evidence and the Alleged Debtor introduced two (2) exhibits into evidence.[1]  Two witnesses testified at the Trial, the Alleged Debtor and the Alleged Debtor's son, Clayton G. Gutierrez, ("Mr. Gutierrez").  No representative of Hancock Whitney testified before the Court, although Richard M. Buntin was listed as a witness for Hancock Whitney in the PTO.  (Dkt. 57 at 44).  After considering the evidence, exhibits, and testimony of witnesses, the Court finds as follows:[2]

## Jurisdiction

This Court has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and/or (O).  Notice of the Trial was proper under the circumstances.

## Facts[3]

Many of the facts leading up to the Involuntary Petition are not disputed and not relevant to the issues before the Court.  The Court includes a broad discussion of the facts in an attempt to provide context to the parties' dispute.  The parties, however, did raise a number of allegations in

---

[1] The exhibits introduced into evidence at Trial by Hancock Whitney are cited as "(HB Ex. ___)."  The exhibits introduced into evidence at Trial by the Alleged Debtor are cited as "(Gutierrez Ex. ___)."  Page numbers refer to the numbers that appear on the document itself.  If no numbers appear on the document, then the page numbers refer to the order that the pages appear in the exhibit.

[2] The Court makes the following findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.

[3] The PTO includes sixty-three (63) numbered paragraphs of stipulated facts (the "Stipulated Facts").  (Dkt. 57 at 29-42).  There are some discrepancies between the Stipulated Facts, exhibits, and the testimony of witnesses.  For those discrepancies that are not material to the dispute, the Court relies on the Stipulated Facts in rendering its conclusions of law.

the PTO that were unsupported by the evidence at Trial but also proved to be immaterial to the ultimate issue before the Court.

## A.    100-Acre Lot

Following the success of subdivision developments in the surrounding area, the Alleged Debtor and Mr. Gutierrez decided to pursue a business opportunity in Stone County, Mississippi. (Test. of Mr. Gutierrez at 10:11:00-10:11:17 (June 12, 2020)).[4]  On November 20, 2007, the Alleged Debtor and Mr. Gutierrez executed a promissory note (the "Note")[5] in the principal amount of $1,000,000.00 payable to Hancock Whitney.[6] (Dkt. 57 at 29; HB Ex. 5 at 5).  With the proceeds of the loan, they purchased approximately one hundred (100) acres along Highway 49 in Stone County, Mississippi (the "100-Acre Lot") (Dkt. 7 at 3) with the intent of developing a retirement community.  (Test. of Mr. Gutierrez at 10:11:00-10:11:52).  To secure repayment of the Note, the Alleged Debtor and Mr. Gutierrez granted Hancock Whitney a deed of trust (the "Deed of Trust") on the 100-Acre Lot.

When the economy began to decline in 2008, the plans to develop a retirement community on the 100-Acre Lot became "more difficult to pursue."  (HB Ex. 5 at 13).  Ultimately, the Alleged

---

[4] The Trial was not transcribed.  The citation is to the timestamp of the audio recording.

[5] The Court was not provided a copy of the original promissory note or any renewals except for the final renewal on April 26, 2013.  Unless otherwise stated, the Court includes in the definition of "Note" all subsequent renewals.  (HB Ex. 3 at 7-8).

[6] In the Motion to Dismiss, the Alleged Debtor states that she and Mr. Gutierrez obtained the loan in the amount of $783,058.15 in 2009.  (Dkt. 7 at 3).  Because the date and amount are not material to the dispute, the Court accepts the amount ($1,000,000.00) and date (November 20, 2007) set forth in the Stipulated Facts.  (Dkt. 57 at 29).

Debtor and Mr. Gutierrez were unable to move forward with the planned development. (Test. of Mr. Gutierrez at 10:11:24-10:11:44).

In accordance with the terms of the original Note, the Alleged Debtor and Mr. Gutierrez made loan payments to Hancock Whitney consisting exclusively of interest on the principal balance during the development phase of the 100-Acre Lot. (Test. of Mr. Gutierrez at 10:12:00-10:12:17). A balloon payment became due in two years and, thus, the Note "was set up on two-year recurring maturities." (Test. of Mr. Gutierrez at 10:12:15-10:12:26). In total, the Note was "renewed or extended" seven (7) times from November 2007 to April 2013 but not always pursuant to the same terms. (Dkt. 57 at 29). Before each renewal, Hancock Whitney would obtain a new appraisal of the 100-Acre Lot. (Test. of Mr. Gutierrez at 10:12:30-10:12:41). Mr. Gutierrez testified that Hancock Whitney required the Alleged Debtor to pledge additional collateral to secure the third renewal because of a decline in the appraised value of the 100-Acre Lot. (Test. of Mr. Gutierrez at 10:12:30-10:12:48). The Alleged Debtor agreed to pledge a certificate of deposit to Hancock Whitney as additional collateral to secure the Note.[7] (Test. of Mr. Gutierrez at 10:12:40-10:12:59). Hancock Whitney again renewed the Note with the same repayment terms. (Test. of Mr. Gutierrez at 10:12:40-10:12:59).

As a condition for the final renewal of the Note on April 26, 2013, Hancock Whitney changed the terms of repayment to include both principal and interest payments, increasing the monthly loan payment. (Test. of Mr. Gutierrez at 10:13:00-10:13:25). Pursuant to the final Note, the Alleged Debtor and Mr. Gutierrez agreed to pay "23 regular payments of $7,742.66 each and

---

[7] There are inconsistencies in the record about the total amount and number of certificates of deposit the Alleged Debtor pledged to Hancock Whitney to secure the Note.

one irregular last payment estimated at $881,263.54" on April 26, 2013.[8]  (HB Ex. 3 at 7).  The principal amount of the loan was $982,777.95 with a maturity date of May 5, 2015.  (HB Ex. 3 at 7).  The Note stated that the "Borrower acknowledges this Note is secured by the collateral referenced in the separate security document(s)."  (HB Ex. 3 at 8).  Because the appraisal indicated an increase in the value of the 100-Acre Lot, Hancock Whitney agreed to release part of its security interest in a certificate of deposit.  (Test. of Mr. Gutierrez at 10:13:30-10:13:48).

## B.    Default

As the May 5, 2015 maturity date of the Note approached, negotiations over the terms of another renewal began and continued thereafter until September 23, 2015.  (HB Ex. 5 at 6).  During this time, the Alleged Debtor and Mr. Gutierrez defaulted on the Note.  (Test. of Mr. Gutierrez at 10:14:00-10:14:50).  Mr. Gutierrez testified that he and the Alleged Debtor shared responsibility for the monthly loan payments of $7,742.66 equally but that he became unable to contribute his share because of a decline in his finances, and the Alleged Debtor was unable to afford the full payment on her own.

On June 3, 2015, Hancock Whitney employed Travis B. Prewett ("Prewett") to perform an updated appraisal of the 100-Acre Lot.  (HB Ex. 5 at 6).  Prewett appraised the 100-Acre Lot for $300,000.00 with a valuation date of May 23, 2015.  (HB Ex. 5 at 6).  From July 20, 2015 to August 10, 2015, "there was a string of e-mails between Brent Fairley, officer at Hancock [Whitney], [the Alleged Debtor,] and [Mr.] Gutierrez regarding the application of the certificates of deposit to the Hancock Note."  (HB Ex. 5 at 6.).  Then, on August 10, 2015, Hancock Whitney applied a certificate of deposit owned by the Alleged Debtor in the amount of $100,000.00 to the

---

[8] The April 26, 2013 Note renewal is the only documentation of the underlying loan admitted into evidence.

balance of the Note.  (HB Ex. 5 at 6).  In the end, the parties failed to reach an agreement as to the terms of another renewal of the Note.

The record is unclear as to the date of the last voluntary payment made by the Alleged Debtor on the Note.  On October 8, 2015, Mr. Henderson sent a letter on behalf of Hancock Whitney to the Alleged Debtor and Mr. Gutierrez informing them that the Note had matured and was in default.  (HB Ex. 3 at 10).  Mr. Henderson provided the status of the loan as follows:

|  |  |
|---|---|
| Borrower: | Anita K. Gutierrez and Clayton F. Gutierrez |
| Date of Loan: | November 20, 2007 |
| Maturity Date: | May 5, 2015 |
| Principal: | $783,058.13 |
| Payoff as of 10/19/15: | $804,963.69 |
| Collateral: | Deed of Trust – 99.65 acre, Hwy 49, Perkinson, Stone County MS |

(HB Ex. 3 at 10).  Mr. Henderson informed the Alleged Debtor and Mr. Gutierrez that Hancock Whitney had authorized him "to take whatever action is necessary to collect the indebtedness on behalf of the bank including but not limited to foreclosure of the collateral."  (HB Ex. 3 at 11).

## C.      Circuit Court Action—Collection Suit

Despite the demand letter, Hancock Whitney chose to forego foreclosure of the Deed of Trust on the 100-Acre Lot and pursue a monetary judgment against the Alleged Debtor and Mr. Gutierrez in satisfaction of the full balance owed on the Note.  On October 28, 2015, Hancock Whitney filed a complaint in the Circuit Court of Harrison County, Mississippi Second Judicial District (the "Circuit Court") (Case No. A2402-15-157) (the "Circuit Court Action") seeking a judgment against them in the amount of $804,963.69 plus attorney's fees, expenses, costs, and pre-judgment and post-judgment interest.  (HB Ex. 3).  On January 8, 2016, the Alleged Debtor and Mr. Gutierrez filed their Joint Affirmative Defenses, Answer and Counterclaims alleging breach

of implied covenant of good faith and fair dealing, constructive fraud, intentional inflection of emotional distress, and negligent infliction of emotional distress.  (HB Ex. 5 at 3).

### D.  Transfer of Personal and Real Property to the Trust and ASG

According to the Alleged Debtor, she was prompted by her age and the death of her husband on June 17, 2015, to retain the law firm of Page, Mannino, Peresich, and McDermott, PLLC in 2016 to assist her in estate planning.  (HB Ex. 11 at 1; Dkt. 7 at 3).  On March 7, 2016, the Alleged Debtor created the Anita S. Gutierrez Revocable Trust (the "Trust") on the advice of her estate-planning attorney.  (HB Ex. 11).  The Alleged Debtor is the Grantor and Trustee of the Trust.  (HB Ex. 11).  Also on the advice of her attorney, the Alleged Debtor incorporated ASG Holding Company, LLC ("ASG"), a Mississippi limited liability company.  (HB Ex. 12).  At ASG's inception, the Alleged Debtor was the registered agent and manager.  (HB Ex. 12).  The Trust is the only member of ASG.  (HB Ex. 12).  The Alleged Debtor owns ninety-eight percent (98%) of ASG; Mr. Gutierrez and his brother each own one percent (1%) of ASG.  (Dkt. 57 at 34).

On March 7, 2016, the Alleged Debtor transferred the following personal and real property to the Trust:

1.  All tangible personal property, including (but not limited to) personal effects, jewelry, furniture, and fixtures (the "Personal Property");

2.  Residence located at 8512 Daisy Vestry Road, Biloxi, Jackson County, Mississippi (the "Daisy Vestry Property");

3.  Real property located at 3650 River Bluff Road, Biloxi, Mississippi (the "River Bluff Property");

4.  1.2 acres of real property on Hill Street (adjoining 555 Bayview Avenue), Biloxi, Mississippi (the "Bayview Property"); and

5.  Ninety-eight percent (98%) ownership interest in ASG Holding, LLC.

(HB Ex. 11).[9]  On the same day, March 7, 2016, the Alleged Debtor, acting as the trustee for the Trust, transferred the River Bluff Property and the Bayview Property to ASG.  The deed transferring the Daisy Vestry Property to the Trust was filed in the land records of Jackson County, Mississippi on March 28, 2016.  (HB Ex. 13).  The deeds transferring the River Bluff Property and the Bayview Property to the Trust and subsequently to ASG were filed in the land records of Harrison County, Mississippi on April 18, 2016.  (HB Exs. 14, 15, 16, & 17).

Following the creation of the Trust and ASG, the Alleged Debtor made a series of changes to her bank accounts at Wells Fargo and People's Bank.[10]  On September 28, 2016, the Alleged Debtor filed a Relationship Change Application for her account at Wells Fargo (the "Wells Fargo Account") (HB Ex. 34).  The Wells Fargo Account previously listed the Alleged Debtor, Anita K. Gutierrez, as primary joint owner and Frank Gutierrez as secondary joint owner.  (HB Ex. 34). The application added "Anita S. Gutierrez Revocable Trust" to the Wells Fargo Account and changed the Alleged Debtor's status to "Trustee (Sole)."  (HB Ex. 34).  The Alleged Debtor also changed the name of her account at People's Bank (the "Peoples Bank Trust Account").  (HB Ex. 29).  The September statement of the Peoples Bank Trust Account lists the Alleged Debtor as the account holder, whereas the October statement identifies the account owner as "Anita S. Gutierrez, Revocable Trust DTD March 7, 2016, Anita S. Gutierrez, Trustee."  (HB Ex. 29).  ASG maintained separate accounts at Peoples Bank and BancorpSouth.  The parties did not admit into evidence any

---

[9] The Stipulated Facts date the conveyance of the Personal Property as occurring on March 7, 2019.  (Dkt. 57 at 35).  At the Trial, Mr. Henderson confirmed that the correct date is March 7, 2016.  (10:46:25-10:46:35).

[10] Hancock Whitney provided the Alleged Debtor's bank records from her accounts at BancorpSouth, Peoples Bank, and Wells Fargo but did not provide any such records from its own institution.

bank documents for any additional bank accounts owned by the Alleged Debtor, ASG, or the Trust. (HB Exs. 21-40). In that regard, the Alleged Debtor testified that she currently does not own a bank account in her own name.

**E.     Financial Statement**

On December 7, 2017, the Alleged Debtor provided Hancock Whitney an updated "Personal Financial Statement, Anita S. Gutierrez, 8512 Daisy Vestry Road, Biloxi, Mississippi 39532" (the "Financial Statement"). (HB Ex. 4). Mr. Henderson argued at the Trial that Hancock Whitney believed that the Financial Statement represented the assets of the Alleged Debtor at that time.     (9:31:00-9:31:44 (June 12, 2020)).    The Financial Statement listed total assets of $1,783,416.00 and total liabilities of $1,350,633.00 for a net worth of $432,783.00. (HB Ex. 4 at 1-2).

The Alleged Debtor's specific assets, according to the Financial Statement, were as follows:

- **Cash and Cash Equivalents**
  - Wells Fargo Checking                                            $8,020.00

- **Loans Receivable**
  - Custom Pack, Inc. by Promissory Note                   $56,422.00

- **Retirement**
  - IRA held at Coast Community                                 $12,507.00
  - IRA held at AXA                                                     $61,847.00
  - IRA held at Mass Mutual                                         $11,000.00

- **Annuities**
  - BancorpSouth (Symetra)                                        $182,705.00

- **Real Estate**
  - 8512 Daisy Vestry Road, Biloxi, MS                      $284,750.00
  - 5 acres located on Daisy Vestry Road, Biloxi, MS    $40,400.00
  - Undivided 50% interest in 99.70 acres                   $150,000.00

- **Other**
  - ○ 2012 Mercedes CLS 550                                    $27,000.00
  - ○ 2011 GMC Acadia                                          $14,500.00
  - ○ Home furnishings and personal effects                    $8,500.00

- **Business Interests**
  - ○ 33 1/3% interest in Custom Cold Storage, Inc. (S-Corp)   $169,668.00
  - ○ 0.006% interest in Global Seafood Technologies           $10,002.00
  - ○ 98% interest in ASG Holding Company, LLC                 $749,095.00

(HB Ex. 4). The Alleged Debtor argued that a comparison of the previous financial statement provided to Hancock Whitney and the updated Financial Statement should have alerted Hancock Whitney to the changes in the Alleged Debtor's finances. (Gutierrez Ex. 2 at 5-6). The Financial Statement did not list the River Bluff Property as a personal asset but disclosed the Alleged Debtor's ownership interest in ASG. Mr. Henderson also argued at Trial, however, that Hancock Whitney relied on the "financial strength" demonstrated by the Financial Statement and was unaware of the transfers of the Alleged Debtor's assets to the Trust and ASG until April 2, 2019. (Dkt. 57 at 27, 32). No representative of Hancock Whitney testified to support that argument at Trial. Moreover, Mr. Henderson admitted that Hancock Whitney did not undertake an independent investigation to verify the information in the Financial Statement, including a title search on the property listed in the Financial Statement.

## F.   Circuit Court Trial—Collection Suit

On December 12, 2017, the Circuit Court held a bench trial in the Circuit Court Action. (HB Ex. 5 at 1). Over one year after the bench trial and over three years after the initiation of the Circuit Court Action on January 3, 2019, the Circuit Court entered the Findings of Fact and Conclusions of Law (HB Ex. 5) and the Final Judgment (the "Final Judgment") (HB Ex. 6). The Final Judgment was rendered in favor of Hancock Whitney and against "[the Alleged Debtor] and [Mr. Gutierrez] jointly and severally in the amount of $889,034.81 with interest to accrue at eight

percent (8%) per annum until paid in full plus all costs and legal fees and expenses in the amount of $222,258.70 for a total amount of $1,111,293.51." (HB Ex. 6). The Circuit Court dismissed with prejudice "[t]he Counterclaims of [the Alleged Debtor] and [Mr. Gutierrez] against Hancock [Whitney] being Count II – Breach of the Implied Covenant of Good Faith and Fair Dealing (Appraisal Manipulation), Count V – Intentional Infliction of Emotional Distress and Count VI – Intentional Infliction of Emotional Distress." (HB Ex. 5 at 29).

**G.    Collection Efforts**

On January 14, 2019, Hancock Whitney enrolled the Final Judgment against the Alleged Debtor and Mr. Gutierrez in the Circuit Courts of Jackson, Stone, and Hancock Counties. (Dkt. 57 at 32). On January 18, 2019, Hancock Whitney scheduled the deposition of the Alleged Debtor on February 12, 2019 (the "Examination") for the purpose of discovering assets upon which execution of the Final Judgment could be made. (HB Ex. 7 at 1). Also on that day, Hancock Whitney served a request for the production of documents (the "Production of Documents") on the Alleged Debtor and Mr. Gutierrez. (HB Ex. 7 at 3). At the Alleged Debtor's request, Hancock Whitney rescheduled the Production of Documents for March 25, 2019 and the Examination for April 2, 2019. (Dkt. 57 at 32).

On January 24, 2019, Hancock Whitney filed eighteen (18) writs of garnishment (the "Writs of Garnishment") attempting to collect the amount owed on the Final Judgment against the Alleged Debtor and Mr. Gutierrez. (HB Ex. 9). On April 4, 2019, the Circuit Court entered the Order Granting Charging Order Related to Anita K. Gutierrez (the "Charging Order") (HB Ex. 10). The parties did not submit into evidence or testify as to the amount collected on the Final Judgment as a result of these efforts.

**H.      Transfer of Funds**

From July 15, 2015 through January 21, 2019, the alleged Debtor withdrew money from her bank accounts at Hancock Whitney and Wells Fargo and from a certificate of deposit issued by Hancock Whitney.  During this same period, Custom Pack, Inc., a family-owned business of the Alleged Debtor and Mr. Gutierrez, issued numerous checks made payable to the Alleged Debtor.  In the PTO, the parties disagree "as to the significance of [these] transfers."  (Dkt. 57 at 36).

The first transfer occurred on July 15, 2015 when Gutierrez withdrew $374,114.48 from certificates of deposit issued by Hancock Whitney.  (Dkt. 57 at 36).  The remaining transfers of funds, as set forth in the Stipulated Facts, were as follows:

| Wells Fargo Account No. xxx6438 | | |
|---|---|---|
| Check No. | Date | Amount |
| | 10/14/15 to 12/10/15 | $32,941.29 taken |
| 1011 | 12/22/15 | $1,200.00 |
| 1055 | 05/23/16 | $2,000.00 |
| 1079 | 09/29/16 | $8,000.00 |
| 1084 | 10/17/16 | $10,000.00 |
| 1086 | 10/18/16 | $15,000.00 |
| 1088 | 10/19/16 | $13,000.00 |
| 1150 | 07/25/17 | $6,000.00 |
| 1156 | 08/09/17 | $5,620.00 |
| 1192 | 12/08/17 | $5,400.00 |
| | | Total:  $99,161.29 |

**Hancock Whitney Account No. xxx3542**

| Check No. | Date | Amount |
|---|---|---|
| 900 | 09/25/15 | $28,000.00 |
| 901 | 09/28/15 | $32,800.00 |
| 902 | 09/30/15 | $42,000.00 |
| | 10/21/15 | $84,000.00 |
| 915 | 10/22/15 | $8,000.00 |
| 926 | 01/11/16 | $4,000.00 |
| 929 | 03/18/16 | $4,028.06 |

Total:  $202,828.06

**Custom Pack, Inc. Account No. xxx3623**

| Check No. | Date of Check | Amount |
|---|---|---|
| 7359 | 11/21/18 | $2,000.00 |
| 7413 | 10/03/18 | $6,000.00 |
| 7422 | 10/05/18 | $2,000.00 |
| 7509 | 11/09/18 | $6,000.00 |
| 7527 | 11/16/18 | $2,000.00 |
| 7574 | 12/06/18 | $4,000.00 |
| 7611 | 12/13/18 | $4,000.00 |
| 7669 | 01/11/19 | $1,353.00 |
| 7683 | 01/18/19 | $1,353.00 |
| 7644 | 12/20/18 | $4,000.00 |
| 7706 | 01/25/19 | $1,353.00 |
| 7712 | 01/21/19 | $2,422.19 |

Total:  $36,481.19

**Custom Pack, Inc. Account No. xxx0848**

| Check No. | Date | Amount |
|---|---|---|
| 111 | 11/25/18 | $3,5000.00 |

(Dkt. 57 at 36-37).

I.      **Chancery Court Action—Fraudulent Transfer Suit**

On April 16, 2019, Hancock Whitney filed a Complaint (the "Chancery Court Complaint") in the Chancery Court of Jackson County, Mississippi (the "Chancery Court") (Case No. 30CH1:19-000675-MAM) (the "Chancery Court Action") against the Alleged Debtor, ASG, and the Trust. (Gutierrez Ex. 1). Hancock Whitney alleged that the Trust is either a constructive trust or the alter-ego of the Alleged Debtor under Mississippi law and asked the Chancery Court to terminate the Trust. (Gutierrez Ex. 1 at 21-22). Hancock Whitney also alleged that ASG is the alter-ego of the Alleged Debtor. (Gutierrez Ex. 1 at 23). Hancock Whitney asserted that the Alleged Debtor's transfers of real and personal property to the Trust and subsequent transfers of real property from the Trust to ASG following the default on the Note are voidable as fraudulent transfers under the Mississippi Uniform Fraudulent Transfers Act, Miss. Code Ann. § 15-3-107. (Gutierrez Ex. 1 at 19). In the Chancery Court Complaint, Hancock Whitney asked the Chancery Court to grant an equitable lien on the Daisy Vestry Property, the River Bluff Property, the Bayview Property, and the Personal Property "including but not limited to cash and financial accounting which may be traced." (Gutierrez Ex. 19-20).

J.      **Voluntary Petition of Mr. Gutierrez**

Mr. Gutierrez filed a voluntary petition under chapter 7 of the United States Bankruptcy Code (the "Code") on November 21, 2019 (Case No. 19-52320-NPO). (Dkt. 57 at 42). In his bankruptcy schedules, Mr. Gutierrez disclosed his one-half interest in the 100-Acre Lot. (Dkt. 57 at 39).

K.      **Chancery Court Motion to Dismiss**

On January 9, 2020, the Alleged Debtor filed a Motion to Dismiss (the "Chancery Court Motion to Dismiss") in the Chancery Court Action. (Gutierrez Ex. 2). In the Chancery Court

Motion to Dismiss, the Alleged Debtor argued that the three-year statute of limitations for the allegedly fraudulent transfers had expired. (Gutierrez Ex. 2 at 2-3). The Alleged Debtor asserted that under the Mississippi Uniform Fraudulent Transfer Act, Hancock Whitney had to bring a cause of action for fraudulent transfer "within three (3) years after the transfer was made or the obligation was incurred or, if later, within one (1) year after the transfer or obligation was or could reasonably have been discovered by the claimant." (Gutierrez Ex. 2 at 2-3) (citing MISS. CODE ANN. § 15-3-115). The Alleged Debtor argued that the transfers of real property occurred on March 7, 2016, and, therefore, the "cause of action for fraudulent conveyance was extinguished prior to the filing of [the Chancery Court Action]" on April 16, 2019. (Gutierrez Ex. 2 at 4).

The Alleged Debtor also argued that the three-year limitations period was not tolled by the one-year "discovery rule" in MISS. CODE ANN. § 15-3-115(a) for two reasons. First, the "deeds from [the Alleged Debtor] to the Trust, were recorded in the public records in March and April of 2016." (Gutierrez Ex. 2 at 5). Second, the Financial Statement given to Mr. Henderson on December 7, 2017 "disclosed that assets worth approximately three quarters of a million dollars had been transferred to her nearly solely [owned] company, [ASG], between September, 2015 and December 2017." (Gutierrez Ex. 2 at 6).

> [The Alleged Debtor] owned a 98% interest in ASG, which in turn is shown to have a value of $749,095. That [the Financial Statement] shows total assets of [the Alleged Debtor], including the value of ASG, to be $1,783,416.00. The most recent financial statement provided to [Hancock Whitney] by [the Alleged Debtor] prior to the [Financial Statement], was a financial statement on Hancock's form dated September 15, 2015. The September 15, 2015 financial statement showed that [the Alleged Debtor's] total assets were valued at $3,228,119.00, and ASG is not included in that financial statement.

(Gutierrez Ex. 2 at 6). A hearing on the Chancery Court Motion to Dismiss was set for February 13, 2020 and the trial was scheduled for April 20, 2020, but neither took place. (Dkt. 7 at 2). The

Chancery Court Action instead was stayed on January 24, 2020 because of the filing of the Involuntary Petition.

**L.    Involuntary Petition**

On January 24, 2020, Hancock Whitney filed the Involuntary Petition under chapter 7 of the Code against the Alleged Debtor.  (Dkt. 1).  In the Involuntary Petition, Hancock Whitney asserts a claim against the Alleged Debtor in the amount of $1,191,293.51 arising from the Final Judgment against the Alleged Debtor and Mr. Gutierrez.  (Dkt. 1 at 3; Dkt. 7-2).  The Involuntary Petition alleges that Hancock Whitney is eligible to file the Involuntary Petition under 11 U.S.C. § 303(b) and that the Alleged Debtor may be the subject of an involuntary case under 11 U.S.C. § 303(a).  In that regard, the Involuntary Petition contends that the Alleged Debtor is generally not paying her debts as they become due and that the debts are not the subject of a bona fide dispute as to liability or amount.  (Dkt. 1 at 3).

**M.    Motion to Dismiss—Rule 12(b)(6)**

On February 18, 2020, the Alleged Debtor filed the Motion to Dismiss.  In the Motion to Dismiss, the Alleged Debtor asserts that the Petition should be dismissed because: (1) "[T]he Petitioners [sic] cannot show that [the Alleged Debtor] was not generally paying her debts as they became due at the time of the filing of the Involuntary Petition"; (2) "[T]he Petitioner filed the Involuntary Petition for the improper purpose of substituting involuntary bankruptcy proceedings for customary collection remedies"; (3) "[T]he Petitioner filed the Involuntary Petition for the improper purpose of using it as a litigation tactic"; (4) "[T]he Petitioner failed to exhaust state court remedies before resorting to the filing of the Involuntary Petition";  and (5) the subject of the Petition is a "Two Party Dispute Case."  (Dkt. 7 at 5-11).  In the alternative, the Alleged Debtor contends that the Court should abstain from exercising jurisdiction under 11 U.S.C. § 305(a).  As

additional relief, the Alleged Debtor seeks an award of "costs, reasonable attorney's fees, damages or punitive damages, and other relief" under 11 U.S.C. § 303(i)-(k). (Dkt. 7 at 6, 11-12).  The Alleged Debtor attached the Declaration of Anita S. Gutierrez, the Final Judgment, and the Chancery Court Motion to Dismiss to the Motion to Dismiss.  (Dkt. 7-1, 7-2, & 7-3).

### 1.       Rule 12(b)(6) Hearing

At a status conference on April 16, 2020, the parties agreed to bifurcate the issues raised in the Motion to Dismiss.  The Court first would consider whether the Involuntary Petition should be dismissed for failure to state a claim for relief pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)").[11]  (Dkt. 38).  If the Court denied the Motion to Dismiss under Rule 12(b)(6), then the Court would consider the remaining issues at Trial.

A telephonic hearing on the issues raised under Rule 12(b)(6) was held on May 6, 2020 (the "Rule 12(b)(6) Hearing").   After the Rule 12(b)(6) Hearing, the Court issued the Memorandum Opinion and Order Denying Relief Requested Under Rule 12(b)(6) of the Federal Rules of Civil Procedure Contained in the Motion to Dismiss Involuntary Petition and Alternatively for Abstention under § 305 and Other Relief (the "12(b)(6) Order") (Dkt. 41) on May 15, 2020.  Accepting the allegations in the Involuntary Petition as true, the Court held that Hancock Whitney had established a prima facie case for relief under 11 U.S.C. § 303.   In reaching its holding, the Court noted that the purposes of Rule 12(b)(6) were not served necessarily by dismissal of a contested involuntary petition prior to a trial on the merits.  (Dkt. 41 at 9-10).

---

[11] Rule 12(b) is made applicable to involuntary petitions by Rule 1011(b) and Rule 7012 of the Federal Rules of Bankruptcy Procedure.  FED. R. BANKR. P. 1011.

### 2.      Trial on the Merits

According to the PTO, the issues that remained for Trial after entry of the Rule 12(b)(6) Order included: (1) whether the Alleged Debtor was generally not paying such debts as they became due pursuant to 11 U.S.C. § 303(h); (2) whether bad faith is a ground for dismissal of the Involuntary Petition and, if so, whether Hancock Whitney filed the Involuntary Petition in bad faith; (3) whether cause exists for the Court to abstain under 11 U.S.C. § 305(a); and (4) whether the Alleged Debtor is entitled to fees, costs, and damages under 11 U.S.C. § 303(i) or other relief under 11 U.S.C. § 303(k).  (Dkt. 57 at 42-44).

### Discussion

To be entitled to an order for relief in an involuntary chapter 7 proceeding, a petitioning creditor must establish the following: (1) that the debtor was eligible to be a debtor in chapter 7; (2) that the petitioning creditor had standing to file the involuntary petition; (3) that the debtor was generally not paying her debts as they became due; and (4) that the debt was not subject to a bona fide dispute.  *In re Kennedy*, 504 B.R. 815, 820-21 (Bankr. S.D. Miss. 2014) (citing 11 U.S.C. § 303(a), (b), & (h)).  The petitioning creditor must prove these requirements by a preponderance of the evidence.  *Id.* (citing *In re Green Hills Dev. Co., LLC*, 445 B.R. 647 (Bankr. S.D. Miss. 2011)).  A debtor may recover costs, attorney's fees, and damages against a petitioning creditor if the involuntary petition is dismissed and if the petitioning creditor filed the involuntary petition in bad faith.  11 U.S.C. § 303(i).  In addition, a debtor may be entitled to other relief if the involuntary petition is dismissed and the involuntary petition is either false or contained any materially false, fictitious, or fraudulent statement.  11 U.S.C. § 303(k).

The Alleged Debtor concedes that the Alleged Debtor may be the subject of an involuntary petition pursuant to 11 U.S.C. § 303(a); that Hancock Whitney is an eligible creditor under 11

U.S.C. § 303(b)(2); and that the Final Judgment in the amount of $1,111,293.51 is not the subject of a bona fide dispute as to liability or amount. (Dkt. 57 at 42). The Alleged Debtor disputes that she was generally not paying her debts as they became due. 11 U.S.C. § 303(h). The Court considers whether Hancock Whitney has met its burden of proving the statutory requirements for an order for relief before addressing the issues raised by the Alleged Debtor regarding bad faith, abstention, and the recovery of her costs, fees, and damages and other relief.

**A.    Was the Alleged Debtor generally not paying her debts as they became due?**

The Court pauses here to emphasize the scope of the narrow issue presented under 11 U.S.C. § 303(h). Hancock Whitney argued in the PTO that the Alleged Debtor "comes before the Court with unclean hands due to her actions of fraud, fraudulent misrepresentation, and fraudulent transfers." (Dkt. 57 at 20). As evidence of her alleged fraud, Hancock Whitney pointed to the Financial Statement, the transfers of her real and personal property, the withdrawals of money from her certificates of deposit and bank accounts at Hancock Whitney, the withdrawals of money from her account at Wells Fargo, and the issuance of checks made payable to the Alleged Debtor from an account held by Custom Pack, Inc. (Dkt. 57 at 34-37). The parties disagreed about the significance of these transfers in the PTO. (Dkt. 57 at 36). Yet Hancock Whitney did not present any representative of Hancock Whitney to testify at Trial in support of its allegations of fraud. Indeed, Mr. Henderson admitted at Trial that Hancock Whitney did not hold a security interest in any of the assets transferred by the Alleged Debtor.

Hancock Whitney's failure to produce a witness at Trial not only left many of the allegations in the PTO unsupported but also created significant gaps in the factual narrative. As a result, the Court has had to expend considerable time and effort sifting through the record. Importantly, this Opinion does not resolve the dispute between the parties regarding Hancock

Whitney's collection of the Final Judgment, and the Court expects that many of these same allegations by Hancock Whitney and the defenses raised by the Alleged Debtor will be presented again to the Court in future pleadings and proceedings. This section of the Opinion, however, is drafted narrowly to address the issues raised by the parties under 11 U.S.C. § 303(h) for which these allegations of fraud not only are unsupported but also immaterial to the outcome reached by the Court. Although for the reasons explained below the outcome is favorable to Hancock Whitney, the Court's conclusions of law should not be viewed as its acceptance of Hancock Whitney's characterization of the Alleged Debtor's conduct as fraudulent.

Section 303(h) provides that "after trial, the court shall order relief against the debtor . . . only if . . . the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount." 11 U.S.C. § 303(h). The phrase "generally not paying" is not defined in the Code. Bankruptcy courts in the Fifth Circuit consider four (4) factors in making this factual determination: "(1) the number of unpaid claims; (2) the amount of such claims; (3) the materiality of the non-payments; and (4) the [alleged] debtor's overall conduct in [its] financial affairs." *In re Moss*, 249 B.R. 411, 422 (Bankr. N.D. Tex. 2000). The "generally not paying" standard "is not a balance-sheet insolvency test based on a comparison of assets and liabilities." *In re Green Hills Dev. Co.*, 445 B.R. 647, 657 (Bankr. S.D. Miss. 2011). Moreover, "[t]here is no single mathematical formula that can be used to determine whether the standard has . . . been met. The diversity exhibited by those suffering financial distress calls for a broad definition rather than a mechanical test." *Id*. (citation & quotation omitted).

1.      **Number and Amount of Unpaid Claims**

To show the number of creditors not being paid and the amount of unpaid debt, Hancock Whitney relies on the Financial Statement, in which the Alleged Debtor listed a total debt of $1,350,633.00 owed to an unknown number of credit card companies, Hancock Whitney, and People's Bank.  (HB Ex. 4 at 2).  The Financial Statement includes the Alleged Debtor's credit card debt in the amount of $4,589.00, two loans from People's Bank that she cosigned in the total amount of $541,080.00, and the Note owed to Hancock Whitney in the amount of $804,964.00. (HB Ex. 4 at 2).  Hancock Whitney also entered into evidence a list of liabilities prepared by the Alleged Debtor in response to an interrogatory propounded in the Circuit Court Action.  (HB Ex. 20).  In addition to the Final Judgment, the list shows credit card debt of approximately $7,500.00, legal fees of approximately $2,500.00, and property taxes of approximately $9,500.00.  (HB Ex. 20).

The Financial Statement is dated December 7, 2017.  Although the interrogatory response is undated, it apparently was provided in early 2019 in response to post-judgment discovery in the Chancery Court Action.  The relevant date for determining whether the Alleged Debtor was generally paying her debts, however, is January 24, 2020, the date of the Involuntary Petition.  *See Subway Equip. Leasing Corp. v. Sims (In re Sims)*, 994 F.2d 210, 222 (5th Cir. 1993).  Thus, the Court gives less weight to Hancock Whitney's evidence and more weight to the testimony of the Alleged Debtor.  In that regard, the Alleged Debtor testified that the Final Judgment is the only debt she owed on the date of the Involuntary Petition.  Moreover, she did not contest the $1,111,293.51 amount of the Final Judgment.  As to the credit card debt mentioned by Hancock Whitney, she stated that she has never been late or missed a regular payment.  (Test. of Alleged Debtor at 9:44:00-9:46:44 (June 12, 2020)).  Indeed, she testified that she routinely pays her credit

card debt in full each month.  With respect to her co-signed debt of $541,080.00, she explained that the loans were obtained for the benefit of two family-owned businesses and were not in default.  Finally, she stated that she owed no legal fees or property taxes.  Based on the Alleged Debtor's testimony, the Court finds that as of January 24, 2020, the Alleged Debtor owed Hancock Whitney $1,111,293.51 and had no other debts.  Because of the contingency of her co-signed debt, the Court does not consider it for purposes of 11 U.S.C. § 303(h).  *In re All Media Props., Inc.*, 5 B.R. 126, 131-33 (5th Cir. 1980).  All other non-contingent debts mentioned by Hancock Whitney were not owed when the Involuntary Petition was filed.

The Court finds that the debt to Hancock Whitney is significant and comprises the Alleged Debtor's total liabilities.  Moreover, the Court finds that even though the Alleged Debtor owed only one debt to one creditor, Hancock Whitney has satisfied the first two (2) factors of the analysis under 11 U.S.C. § 303(h).

The Alleged Debtor argues that the Involuntary Petition was "improperly filed in a two (2) party dispute where there are no other creditors."  (Dkt. 57 at 44).  The phrase "generally not paying," however, requires consideration of both the number of creditors and the amount of debt not being paid.  Here, the number of creditors is insubstantial, but the amount involved is not.  Bankruptcy courts in the Fifth Circuit have held that a finding that an alleged debtor is not generally paying her debts may be appropriate "'when [she] is not paying one hundred percent of [her] debts to only one creditor, or [when she is] paying most of [her] debts in number to small recurring creditors, but is not paying a few creditors that make up the bulk of [her] debts.'"  *In re Kennedy*, 504 B.R. at 822 (quoting *In re Smith*, 415 B.R. 222, 231 (Bankr. N.D. Tex. 2009)).

In *In re Smith*, for example, the alleged debtor was paying all of his recurring debts but was not paying a $4,000,000.00 judgment.  *In re Smith*, 415 B.R. at 228-29.  The bankruptcy court

held that "even though [he is] paying . . . his small recurring debts as they come due, he is not paying ninety-nine percent of his debts in aggregate amount." *Id.* at 231. Similarly, the Alleged Debtor is paying her other expenses, but is not paying the Final Judgment, which constitutes her single, largest debt.

The Alleged Debtor cites *Paroline v. Doling* (*In re Doling*), 116 B.R. 583, 585 (Bankr. S.D. Ohio 1990), for the proposition that nonpayment of a single debt is insufficient to meet the "generally not paying" standard. The Ohio bankruptcy court reached that conclusion because 11 U.S.C. § 303(h) refers to the "debtor's debts" rather than the "debtor's debt." Even so, it acknowledged that there are exceptions to this rule, when, for example, there is evidence of fraud or state law remedies are inadequate. This Court, however, agrees with other bankruptcy courts in the Fifth Circuit that precluding a single creditor holding an undisputed claim from filing an involuntary petition "cuts against the statutory language of [11 U.S.C.] § 303(b)(2), which clearly contemplates a single creditor initiating involuntary proceedings." *In re Kennedy*, 504 B.R. at 823 (citing *In re Green Hills Dev. Co.,* 445 B.R. at 657; *In re Smith*, 415 B.R. 222, 231 (Bankr. N.D. Tex. 2009); *Aigner v. McMillan (In re McMillan)*, No. 11-47029-DNK-7, 2913 WL 2445042, at *4 (Bankr. N.D. Tex. June 4, 2013)). "Further, requiring a debtor to be in default on more than one of his debts to satisfy [11 U.S.C.] § 303(h) allows the debtor to completely ignore an obligation—such as a judgment—that makes up the vast majority of the debt he owes so long as he is current on all of his other recurring obligations." *Id*.

## 2.    Materiality of the Non-Payments and Conduct of Financial Affairs

The Alleged Debtor testified that she has sufficient resources to pay her recurring, living expenses.  The Final Judgment, which she has made no effort to pay voluntarily,[12] constitutes the Alleged Debtor's sole debt.  In the Financial Statement, she valued her assets at $1,783,416.00. Her unwillingness to pay Hancock Whitney appears to be related at least in part to her argument that Hancock Whitney should have foreclosed on the 100-Acre Lot before obtaining the Final Judgment.   In Mississippi, however, a lender has multiple remedies upon the default of a promissory note and may choose to proceed with a collection suit against the borrower without first foreclosing on the deed of trust.  *West Point Corp. v. New N. Miss. Fed. Savs. & Loan Ass'n*, 506 So. 2d 241, 242 (Miss. 1987).  Her reason for not paying the Final Judgment does not call into question the validity of the debt owed to Hancock Whitney but her frustration with Hancock Whitney's collection remedies.

Counsel for Hancock Whitney argued at the Trial that the Alleged Debtor's estate planning was a disguised attempt to "take the same actions any debtor takes when they think that someone is about to get a judgment against them or are chasing them—they start hiding assets." (11:07:55-11:08:54 (June 12, 2020)).  The Alleged Debtor conveyed substantially all of her real and personal property to the Trust and subsequently certain real property from the Trust to ASG on March 7, 2016, after Hancock Whitney filed the Circuit Court Action.  The Alleged Debtor testified that the

---

[12] The Alleged Debtor did not present any evidence to indicate the amounts that Hancock Whitney may have recovered as a result of the Writs of Garnishment and the Charging Order. Even if she had, the Court would not treat them as payments by the Alleged Debtor for purpose of its analysis since they would not have been paid voluntarily.  *In re All Media Props., Inc.*, 5 B.R. at 131-33.  Also, the Court notes that unless an exception applies, the filing of an involuntary bankruptcy petition immediately imposes an automatic stay arising under 11 U.S.C. § 362.  *See In re Pink Moon Enters., LLC*, 444 B.R. 490 (Bankr. S.D. Fla. 2011).  The Alleged Debtor did not raise a possible violation of the automatic stay.

transfers were proposed by her estate-planning attorney after the death of her husband on June 17, 2015. These circumstances arguably could lead a fact-finder to infer that the Alleged Debtor was managing her financial affairs either to avoid Hancock Whitney's collection efforts or to plan for the succession of her assets to her sons. Without additional evidence in the record, the Court is unable to determine at this time whether the transfers were fraudulent and thus considers the transfers to be a neutral factor in the 11 U.S.C. § 303(h) analysis. From the evidence presented, however, the Court finds that the Alleged Debtor was paying all creditors except Hancock Whitney and was not paying Hancock Whitney for reasons unrelated to the validity or amount of the Final Judgment. Such evidence of her conduct supports a finding that she was "generally not paying" her debts.

### 3.      Summary

The evidence at Trial about the Alleged Debtor's payments and debts persuades the Court that the Alleged Debtor was generally not paying her debts as they became due when the Involuntary Petition was filed. Accordingly, the Court finds that Hancock Whitney has met the statutory requirements under 11 U.S.C. § 303(b), (h) for entry of an order of relief. The burden now shifts to the Alleged Debtor, and the Court considers her arguments that the Involuntary Petition should be dismissed either because it was filed in bad faith or because cause exists for the Court to abstain.

### B.      Is bad faith a ground for dismissal of the Involuntary Petition, and, if so, was the Involuntary Petition filed in bad faith?

The Alleged Debtor asks the Court to dismiss the Involuntary Petition even if it finds that Hancock Whitney otherwise has satisfied the statutory requirements of 11 U.S.C. § 303(b), (h), because it "is being used as a litigation tactic in a two (2) party dispute where there are no other creditors in violation of the general good faith requirement of the Bankruptcy Code, enforceable

under 11 U.S.C. § 105." (Dkt. 57 at 9). Before reaching the merits of the Alleged Debtor's argument, the Court must consider whether bad faith constitutes an independent cause for dismissal.

By invoking 11 U.S.C. § 105 as authority for the relief she seeks, the Alleged Debtor recognizes that 11 U.S.C. § 303(b) does not explicitly require that an involuntary petition be filed in good faith. *In re Kennedy*, 504 B.R. at 823; *see* 2 COLLIER ON BANKRUPTCY ¶ 303.16. Indeed, "bad faith" is mentioned only in 11 U.S.C. § 303(i), which "contemplates bad faith only as a requirement for the recovery of punitive damages *after* the involuntary petition is dismissed." *In re Kennedy*, 504 B.R. at 823-24; *see also In re Kidwell*, 158 B.R. 203, 217 (Bankr. E.D. Cal. 1993) (Section 303(i) "makes plain that bad faith is not relevant unless consequential and punitive damages are under consideration.").

This Court previously held in *In re On-Site Fuel Serv., Inc.,* No. 18-04196-NPO, 2019 WL 2252003 at *9-10 (Bankr. S.D. Miss. May 24, 2019), that it lacks the authority to impose non-statutory requirements on involuntary bankruptcy proceedings. For that reason, this Court declined to apply principles of equity under 11 U.S.C. § 105 to create a good faith exception that otherwise does not exist in the Code. *See Law v. Siegel*, 571 U.S. 415, 427 (2014) (restricting use of equity in bankruptcy to expand text of Code). As it found in *On-Site Fuel Services*, the Court finds here that if the petitioning creditor satisfies "the prerequisite requirements under § 303, 'a finding of bad faith [is] inappropriate.'" *In re Kennedy*, 504 B.R. at 824 (quoting *Aigner v. McMillan*, No. 11-47029-DML-7, 2013 WL 2445042, at *4 (Bankr. N.D. Tex. June 4, 2013)). Having determined that bad faith is not a ground for dismissal, it is thus unnecessary to consider

the Alleged Debtor's argument that Hancock Whitney acted in bad faith in filing the Involuntary Petition.

**C.      Should the Court dismiss the Involuntary Petition based on the doctrine of abstention?**

The Alleged Debtor argues that the Court should exercise its "power to decline [to] take jurisdiction over a case" pursuant to 11 U.S.C. § 305(a).  (Dkt. 7 at 11).  Section 305(a) provides that "the court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if – (1) the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1).  Abstention under 11 U.S.C. § 305 is an extraordinary remedy.  *In re StatePark Bldg. Grp., Ltd.*, 316 B.R. 466, 476 (Bankr. N.D. Tex. 2004).  For that reason, the party seeking abstention bears a substantial burden of proof.  *In re Sherwood Enters., Inc.*, 112 B.R. 165, 167 (Bankr. S.D. Tex. 1989).  Relief under 11 U.S.C. § 305(a)(1) generally is reserved for those rare occasions when both the creditors and the debtor would be better served by dismissal.  2 Collier on Bankruptcy ¶ 305.02 (16th ed. 2019).  The factors relevant to the abstention inquiry are:  (1) the economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a  less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought." *In re Tex. EMC Mgmt., LLC*, Nos. 11-40008-H3-7, 11-40017-H3-7, 2012 WL 627844 2012 WL 627844 at *3 (Bankr. S.D. Tex. Feb. 24, 2012).

The Alleged Debtor's argument in the Motion to Dismiss consists of a recitation of these seven factors and the facts most favorable to her. (Dkt. 7 at 11-12). For the reasons that follow, the Court finds that the Alleged Debtor has not met the substantial burden of proof necessary to invoke abstention under 11 U.S.C. § 305(a).

### 1.       Economy and Efficiency of Administration

The Alleged Debtor claims that the Chancery Court Action provides a more economic and effective resolution of the debt owed Hancock Whitney and the parties should be allowed to conclude that litigation. The Alleged Debtor contends that at the time the Involuntary Petition was filed, the Chancery Court Action was in its final stages. (Dkt. 57 at 22). Hancock Whitney disputes the Alleged Debtor's characterization of the status of the litigation in the Chancery Court Action and points out that the deposition of the Alleged Debtor was cancelled at her request. Hancock Whitney also suggests that bankruptcy court provides a more economic and efficient administration, in large part, because Mr. Gutierrez already has filed a voluntary petition for relief under chapter 7 of the Code.[13] (Dkt. 57 at 24). Because Mr. Gutierrez and the Alleged Debtor equally own the 100-Acre Lot, the sale of this property could be accomplished more easily in their individual bankruptcy cases through 11 U.S.C. § 363. The Alleged Debtor does not provide a convincing argument that the Chancery Court Action provides for a more economic and efficient administration of the parties' dispute.

### 2.       Availability of Another Forum

The Alleged Debtor contends that the Chancery Court Action constitutes an alternative forum. Hancock Whitney initiated the Chancery Court Action in an attempt to employ state law

---

[13] The Court considers the existence of Mr. Gutierrez's pending, voluntary bankruptcy case only with respect to the Alleged Debtor's abstention argument but considers that fact immaterial in its determination of whether to grant the Involuntary Petition.

remedies to collect the Final Judgment. As Hancock Whitney points out, if the Alleged Debtor were to prevail on the Chancery Court Motion to Dismiss, bankruptcy would still exist as an avenue for the collection on the Final Judgment. *See* 11 U.S.C. § 548(e)(1) (authorizing avoidance of certain transfers by a debtor to a self-settled trust during ten (10)-year lookback period). Moreover, the Alleged Debtor does not explain how Hancock Whitney's interest would be better served in the Chancery Court Action.

### 3. Necessity of Federal Proceedings

The Alleged Debtor asserts that the Court should exercise its discretion to abstain because state proceedings are adequate. As Hancock Whitney suggests, if the Alleged Debtor is successful on the Chancery Court Motion to Dismiss, then the state court proceedings would not serve Hancock Whitney's interests because the Final Judgment would remain uncollected. (Dkt. 57 at 26). The Alleged Debtor asserts that Hancock Whitney is using the Involuntary Petition as a "litigation tactic" to avoid an unfavorable ruling based on Mississippi's statute of limitations in the Chancery Court Action. The Court finds this argument unconvincing. The Court cannot ignore the availability of a remedy provided by the Code if all other requirements have been met.

### 4. Alternative Means of Achieving Equitable Distribution of Assets

The Alleged Debtor heavily relies on the assertion that the Involuntary Proceeding is a two-party dispute. She cites bankruptcy courts in other jurisdictions that have held that abstention may serve the best interest of the creditors and debtor when an involuntary case is essentially a two-party dispute. *See In re ELRS Loss Mitigation, LLC*, 325 B.R. 604, 634 (Bankr. N.D. Ok. 2005) ("use of an involuntary bankruptcy filing is an improper method of resolving a two-party dispute"); *In re Jr. Food Mart of AR, Inc.*, 241 B.R. 423 (Bankr. E.D. Ark. 1999). This two-party dispute differs from those that have been considered improper for resolution in bankruptcy court because

the dispute between the Alleged Debtor and Hancock Whitney does not involve the validity or amount of the Final Judgment, but the remedies employed by Hancock Whitney to collect the debt. Courts in the Fifth Circuit, moreover, have held that "§ 303(b)(2) specifically contemplates a two-party dispute by allowing a single creditor holding a claim greater than [a certain amount] that is not contingent as to liability or subject to a bona fide dispute to file an involuntary petition." *In re Kennedy*, 504 B.R. at 829. Without bankruptcy relief, the Alleged Debtor will continue paying all her creditors but Hancock Whitney, thus not making voluntary payments on the debt that constitutes her only significant obligation. Regardless of the outcome of the Chancery Court Action, Hancock Whitney still has an enforceable Final Judgment against the Alleged Debtor, and the bankruptcy court system is designed to afford equitable treatment to all creditors. *See In re Rookery Bay, Ltd.*, 190 B.R. 949 (Bankr. M.D. Fla. 1995).

### 5.   Out-of-Court Resolution

The parties admit that they have been unable to resolve their dispute. The Alleged Debtor references Hancock Whitney's refusal to foreclose on the 100-Acre Lot. That decision was within Hancock Whitney's prerogative under Mississippi law. No purpose will be served in dismissing the Involuntary Petition to allow the parties to pursue an out-of-court settlement of their dispute.

### 6.   Non-Federal Insolvency Proceedings

The Alleged Debtor states that non-federal insolvency proceedings have not been initiated. While the parties have expended extensive resources in the Circuit Court Action and Chancery Court Action, the parties are now before this Court. Regardless of the outcome of the Chancery Court Motion to Dismiss, the Final Judgment remains a valid judgment and Hancock Whitney is unlikely to cease its collection efforts. The Court is confident Hancock Whitney would continue

to pursue collection remedies against the Alleged Debtor, which might ultimately place the Alleged Debtor before the bankruptcy court.

### 7.      Purpose for Bankruptcy Jurisdiction

Finally, the Alleged Debtor argues that Hancock Whitney's entire purpose in filing the Involuntary Petition is to collect its debt.  The Alleged Debtor has argued repeatedly that Hancock Whitney filed the Involuntary Petition in bad faith and as a litigation tactic to undermine her statute of limitations defense asserted in the Chancery Court Action.  The Court already has held that Hancock Whitney has met the necessary requirement under 11 U.S.C. § 303(b), (h) and the Court will not use abstention to insert a good faith requirement into the statute.  Although an involuntary proceeding may be an uncommon collection remedy, it is available under the Code for a single creditor to collect on a single debt.

### 8.      Summary

While the Court recognizes the Alleged Debtor's frustration with the use of the Involuntary Petition as a collection remedy, even if the Chancery Court Action is dismissed, the Final Judgment remains.  Abstention under 11 U.S.C. § 305(a) requires that the moving party overcome the substantial burden to show that the extreme remedy of abstention best serves the interests of both the creditor and the debtor.  The Alleged Debtor has not met the substantial burden required for the Court to exercise the extraordinary remedy under 11 U.S.C. § 305(a).  A bankruptcy case clearly would be in the best interests of Hancock Whitney and may be in the best interests of the Alleged Debtor, allowing her to marshal her assets and pay the Final Judgment.

**D.      Is the Alleged Debtor entitled to fees, costs, and damages under 11 U.S.C. § 303(i) or other relief under 11 U.S.C. § 303(k)?**

In the Motion to Dismiss, the Alleged Debtor requests that the Court award her reasonable costs and attorney's fees of approximately $15,000.00 under 11 U.S.C. § 303(i); proximate

damages or punitive damages under 11 U.S.C. § 303(i)(2); and relief under 11 U.S.C.§ 303(k) including: "(1) an Order 'sealing the records of the court relating to the Involuntary Petition, and all references to the Involuntary Petition pursuant to § 303(k)(2), and (2) an [O]rder prohibiting all consumer reporting agencies (as defined in section 603(f) of the Fair Credit Reporting Act (15 U.S.C. § 1681(a)(f)) from making any consumer report (as defined in section 603(d) of that Act) that contains any information relating to the Involuntary Petition." (Dkt. 7 at 13). Hancock Whitney contends that the Alleged Debtor has waived such claims by not including them in the Answer. *See* FED. R. BANKR. P. 1011(b), (d).

The Alleged Debtor's requested relief under 11 U.S.C. § 303(i) and (k) is available only upon the dismissal of the Involuntary Petition. Because the Court has granted the Involuntary Petition, the Court denies the Alleged Debtor's request for relief without reaching the waiver issue.

### Conclusion

Hancock Whitney has proven by a preponderance of the evidence that the Alleged Debtor was not generally paying her debts as they became due. The Court reaches this conclusion without considering the allegations of Hancock Whitney that the Alleged Debtor engaged in fraudulent conduct with respect to the transfer of certain assets. Because the Alleged Debtor has conceded the other statutory requirements for entry of an order for relief, the Court finds that the Involuntary Petition should be granted. Since Hancock Whitney met its burden under 11 U.S.C. § 303(b), (h), a good faith analysis of Hancock Whitney's actions in filing the Involuntary Petition is improper, and the Alleged Debtor is not entitled to the other requested relief. Finally, the Alleged Debtor has failed to meet the substantial burden for the Court to exercise its discretion to abstain pursuant to 11 U.S.C. § 305(a). An order for relief under chapter 7 should be granted and the Motion to

Dismiss should be denied.  A final judgment will be entered in accordance with Rules 7054 and 9021 of the Federal Rules of Bankruptcy Procedure.

##END OF OPINION##